UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



CHARLES JOSEPH PARKER, JR.,

                        Plaintiff,

-v-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

18 Civ. 3814 (PAE) (HBP)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Charles Joseph Parker, Jr., brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), which denied Parker's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Before the Court is the July 19, 2019 Report and Recommendation of the Hon. Judge Henry B. Pitman, Magistrate Judge, recommending that the Court grant Parker's motion, deny the Commissioner's motion, and remand the case to the administrative law judge ("ALJ") for further proceedings. Dkt. 29 ("Report"). For the following reasons, the Court adopts the Report in part, including its recommendation of remand.

## I. Background[1]

### 1. Parker's Background

Parker was born in 1972 and claims that he became disabled on December 1, 2012 due to mental impairments and a heart condition. *See* Report at 2–3. He completed the 11th grade and worked as a temporary manual laborer at various jobs from 2000 to 2006 and as a truck driver from 2007 to 2010. *Id.* at 3. Parker is single and has adult children. *Id.* At the time of filing his application with the Social Security Administration, he lived with his mother, sister, and niece, though he had previously lived with roommates. *Id.* In his application, Parker stated that he is able to get dressed every day; sometimes needs reminders to shower; and can prepare simple meals, though others generally prepare food for him. *Id.* at 4. He spends days watching television and does not socialize; he leaves his home only for medical appointments and therapy. *Id.*

### 2. Social Security Administration Proceedings

On October 23, 2014, Parker filed applications for disability insurance benefits and supplemental security income benefits. *Id.* at 2. After the Social Security Administration initially denied his application, Parker requested and received a hearing before an ALJ. *Id.* On January 6, 2017, Parker and his attorney appeared before ALJ Katherine Egdell. *Id.* At the hearing, Parker and a vocational expert testified. *Id.*

On March 6, 2017, the ALJ issued her decision that Parker was not disabled within the meaning of the Social Security Act for the period from December 1, 2012 through the present. *See id.* The ALJ employed the five-step evaluation process set out in 20 C.F.R.

---

[1] The Court's summary of the facts is drawn from the detailed account of facts provided in the Report, to which neither party objects. Where indicated, the Court has also drawn facts from the administrative record. Dkt. 13 ("AR").

2

§ 404.1520(a)(4), under which the claimant has the burden at the first four steps and the Commissioner has the burden at the fifth step. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

At step one, the ALJ found that Parker had not engaged in substantial gainful activity since December 1, 2012. Report at 38. At step two, the ALJ determined that Parker suffered from "severe" impairments, including alcohol abuse/dependence disorder, bipolar disorder, major depression, post-traumatic stress disorder, and borderline intelligence. *Id.* At step three, the ALJ concluded that Parker's severe impairments did not meet or exceed the specified criteria of any listed impairment. *See id.* at 38–41. As a result, the ALJ could not conclude at step three that Parker was disabled.

Before proceeding to step four, the ALJ determined Parker's "residual functional capacity" ("RFC"), which is an assessment of "his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments," including non-severe impairments. AR at 29. In her RFC analysis, the ALJ determined that Parker had the RFC to perform "a full range of work at all exertional levels but with the following limitations: [He] is limited to simple repetitive tasks with only occasional interaction with supervisors, co-workers and the general public." Report at 41. To reach her RFC determination, the ALJ considered the "opinions of [Parker's] treating and consultative physicians and other sources," and Parker's own testimony. *Id.* at 41. Relevant here, the ALJ assigned "little weight" to the opinion of Dr. Muthaiah Chandrasekhara, discussed more fully below. *Id.* at 44; *see infra* Part III.B.

At step four, given that limitation on interaction, the ALJ concluded that Parker could not perform his past work as a store warehouse laborer, cart attendant, or truck driver. Report at 45.

At step five, the ALJ considered the testimony of the vocational expert and concluded that jobs existed in significant numbers that Parker could perform. *Id.* In particular, she found that Parker could be a packager, a laboratory equipment cleaner, and a polisher. *Id.* Thus, the ALJ finally determined that Parker was not disabled. *Id.* at 46.

On March 2, 2018, the Appeals Council denied Parker's request for review of the ALJ's decision, making it the Commissioner's final decision. *Id.* at 3.

### 3. This Litigation

On April 30, 2018, Parker timely commenced this action. *See* Dkt. 1 ("Compl."). Parker asserted that the Commissioner's decision to deny his disability was not supported by substantial evidence and was contrary to relevant law and regulations. *Id.* ¶ 11. On May 2, 2018, this Court issued its standing order that in cases with motions for judgment on the pleadings, the Commissioner has 90 days following service to file a certified transcript of the administrative proceedings, which functions as his answer. Dkt. 5. On August 20, 2018, in accordance with the May 2, 2018 order, the Commissioner filed the administrative record. Dkt. 13.

On October 7, 2018, this Court referred the case to Magistrate Judge Henry B. Pitman. Dkt. 10. On October 30, 2018, Parker filed his motion to remand to the Social Security Administration for further proceedings. Dkt. 15. The same day, he also filed a memorandum in support of his motion. Dkt. 16 ("Pl. Mem."). In his memorandum, Parker argued that the ALJ (1) erroneously concluded, at step three, that Parker did not meet the criteria for certain impairments; and (2) incorrectly evaluated and weighed evidence at the step-four RFC determination, particularly with respect to evidence of learning disabilities. *See id.* at 19–24. Of particular importance here, Parker argued, in connection with the second claim of error, that the ALJ had wrongly discounted Dr. Chandrasekhara's opinion, and thereby violated the "treating physician rule." *See id.* at 23–24. On February 11, 2019, the Commissioner filed his motion for

4

judgment on the pleadings, Dkt. 21, and his memorandum of law in support, Dkt. 22. On February 19, 2019, Parker filed a reply. Dkt. 23.

On May 29, 2019, the Second Circuit decided *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019), which addressed the proper weight to assign to the opinion of a treating physician. *See id.* at 95–98; *see also infra* Part III.A.1.

On June 3, 2019, in response to the *Estrella* decision, Judge Pitman ordered the parties to submit supplemental briefing on (1) "whether remand to develop the record with respect to Dr. Chandrasekhara's treatment relationship with [Parker] and his or her specialty, if any, is required" and (2) "whether the ALJ's failure to expressly address the *Burgess* factors requires remand."[2] Dkt. 24 at 2. On July 1, 2019, Parker filed his supplemental letter brief, in accordance with Judge Pitman's order, Dkt. 27 ("Pl. Supp. Br."), as did the Commissioner, Dkt. 28 ("Def. Supp. Br.").

On July 19, 2019, Judge Pitman issued his Report and Recommendation on the parties' cross-motions for judgment on the pleadings. *See* Report. As to Parker's claim of error, relating to step three, Judge Pitman found that the ALJ's impairment assessments were supported by substantial evidence. *See* Report at 49–53 (assessment for Listings 12.04 and 12.06 paragraph B); *id.* at 54–55 (assessment for Listings 12.04 and 12.06 paragraph C); *id.* at 55–59 (assessment for Listing 12.05). As to Parker's second claim of error, relating to the RFC analysis, Judge Pitman found that the ALJ's assessment that Parker could perform unskilled work with limited interactions was supported by substantial evidence. *See id.* at 59–61.

---

[2] The "*Burgess* factors" include: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95–96 (alteration in original). These factors are discussed more fully *infra* Part III.A.1.

5

However, Judge Pitman determined that remand was necessary to resolve Parker's claim that the ALJ violated the treating physician rule by assigning "little weight" to Dr. Chandrasekhara's opinion in the RFC analysis. *See id.* at 64–69. He reasoned that the ALJ, in giving that opinion little weight, had not developed the record related to Dr. Chandrasekhara's treatment relationship and specialty; specifically, he concluded, the ALJ did not explicitly consider the *Burgess* factors, namely, (1) the frequency, length, nature, and extent of Dr. Chandrasekhara's treatment, and (2) whether Dr. Chandrasekhara was a specialist. *See id.* at 65. With that limitation, Judge Pitman did state, however, that the ALJ had otherwise recited "good reasons" for discounting Dr. Chandrasekhara's opinion. *See id.* at 66–67 & n.16.

Judge Pitman therefore recommended granting Parker's motion for judgment on the pleadings, denying the Commissioner's motion, and remanding to the ALJ for further proceedings. *Id.* at 69. Judge Pitman recommended that the ALJ, on remand, first determine whether Dr. Chandrasekhara was Parker's treating physician; second, obtain any records that support Dr. Chandrasekhara's opinion; and finally, if Dr. Chandrasekhara was the treating physician, explicitly state the reasons for assigning particular weight to his opinion. *Id.* at 68–69.

On August 2, 2019, the Commissioner timely filed objections to the Report. Dkt. 30 ("Def. Obj."). On August 3, 2019, Parker replied. Dkt. 31 ("Pl. Reply").

## II. Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir. 1997).

However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error. *See Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011); *Kirk v. Burge*, 646 F. Supp. 2d 534, 539 (S.D.N.Y. 2009) (collecting cases). That is, a district court reviews for clear error when the objecting party "submit[s] papers . . . which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

This Court's review of an appeal of a denial of disability benefits, pursuant to 42 U.S.C. § 405(g), is limited to two inquiries. First, the Court must determine whether the Commissioner applied the correct legal principles in reaching a decision. *Johnson v. Astrue*, 563 F. Supp. 2d 444, 453 (S.D.N.Y. 2008) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). Second, the Court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id.* "Substantial evidence is more than a mere scintilla. It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (emphasis in original) (internal quotation marks and citations omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" *Id.* at 447 (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). "However, legal error is cause for remand, even if substantial evidence exists to support the Commissioner's findings." *Oomen v. Berryhill*, No. 16 Civ. 3556 (JLC), 2017 WL 1386355, at *12 (S.D.N.Y. Apr. 17, 2017) (internal quotation marks omitted).

Because a Social Security ALJ has an affirmative duty to develop the record, *see infra* Part III.A.2, before reviewing the record evidence, a reviewing court "must first be satisfied that

the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09 Civ. 3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (internal quotation marks omitted).

### III. Discussion

#### A. Applicable Legal Standards

##### 1. The Treating Physician Rule and *Estrella*

A treating physician, or a treating source, is an "acceptable medical source who provides [a claimant] or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). While a physician "who has examined a claimant on one or two occasions" is generally not a treating physician, there is "no minimum number of visits required to establish a treating physician relationship; instead, the court's focus should be on the nature of the relationship." *Nunez v. Berryhill*, No. 16 Civ. 5078 (HBP), 2017 WL 3495213, at *23 (S.D.N.Y. Aug. 11, 2017); *see also* 20 C.F.R. § 404.1527(a)(2) (advising that the Commissioner will examine "if the nature and frequency of the treatment or evaluation is typical for your condition(s)").

Once the ALJ determines that a physician is a treating physician, he or she must then analyze the treating physician's opinion. The treating physician rule requires giving controlling weight to the treating physician's opinion when it is supported by accepted techniques and not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see also Estrella*, 925 F.3d at 95 (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). In *Estrella*, the Second Circuit held that when considering a treating physician's opinion, an ALJ must decide (1) whether the opinion is entitled to controlling weight, and (2) if not, what weight, if any, to give the opinion. *Id.* at 95. An ALJ must give "good reasons" for his or her decisions at both steps. *Id.* at 96. But with regard to step two, the ALJ must "explicitly consider" the "*Burgess*

8

factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95–96 (alteration in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2)))). The first factor is especially important in cases involving depression, where "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Id.* at 97 (alteration in original). If an ALJ fails to explicitly apply these factors, he or she has committed a procedural error that may require remand. *See id.* at 96. To determine if remand is necessary, a court asks "whether a searching review of the record . . . assures [it] . . . that the substance of the [treating physician] rule was not traversed— *i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to the treating physician's opinion. *Id.* (internal quotation marks and citations omitted).

Without "good reasons," the procedural error is not harmless, and remand is required. *See id.*; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.")). Remand is especially important where the ALJ discounts a physician's report that "is significantly more favorable to the claimant than the evidence considered." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). The requirement of providing good reasons for the weight assigned to a treating physician's opinion is important because it "let[s] claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable." *Snell*, 177 F.3d at 134. The Second Circuit has been clear that it will "continue remanding when [it] encounter[s] opinions from

9

ALJ's [sic] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

### 2. Duty to Develop the Record

An ALJ has an affirmative duty to develop the administrative record. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009); *see also* 20 C.F.R. § 416.912(b). This duty applies even when the claimant is represented by counsel because social security disability hearings are non-adversarial. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). However, the ALJ need not seek out additional evidence if there are no "obvious gaps" in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

With regard to treating physicians, the ALJ's duty to develop the record requires that he or she recontact a treating physician "[i]f the opinion of [the] treating physician is not adequate." *Mitchell v. Astrue*, No. 07 Civ. 285 (JSR), 2009 WL 3096717, at *17 (S.D.N.Y. Sept. 28, 2009). This is because "the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis." *Hooper v. Colvin*, 199 F. Supp. 3d 796, 807 (S.D.N.Y. 2016) (quoting *Selian*, 708 F.3d at 420); *see also id.* ("[T]he 'treating physician rule' is inextricably linked to the duty to develop the record.").

### B. Factual Background: Dr. Chandrasekhara's Opinion

Dr. Chandrasekhara is a psychiatrist at Access: Supports for Living ("Access"), a community counseling center where Parker began receiving treatment in 2015. Report at 21; Def. Obj. at 3. The record does not indicate whether Dr. Chandrasekhara has any specialty beyond general psychiatry. Report at 25 n.8.

On October 18, 2016, Parker represented, in a form submitted to the Social Security Administration, that Dr. Chandrasekhara had treated him for years. *See* AR at 315 (listing dates of treatment as "ongoing—years"). Previously, in a January 16, 2015 psychiatric evaluation,

Parker had named Dr. Salia Kathpalia as his psychiatrist. *Id.* at 512. But it is clear that in 2016 and 2017, Dr. Chandrasekhara prescribed Parker various medications, *see id.* at 316 (prescribing medications from April 2016 to October 2016); Def. Obj. at 3 (citing AR at 799 ("CHA" renewing prescriptions from May to October 2016 and January to February 2017)), and "co-signed and supervised" Parker's treatment plan, Def. Obj. at 3; *see also* AR at 866 (signature dated October 18, 2016).

The Commissioner argues that there is not definitive evidence in the record that Dr. Chandrasekhara "ever met with" or "actually evaluated" Parker. Def. Obj. at 3. But entries in Access treatment records are signed by "CHA." Report at 68 (citation omitted); *see also* AR at 800, 802, 804–05, 809, 811, 815, 817, 819. The record does not clearly establish who "CHA" is. Report at 68.

On January 5, 2017, Dr. Chandrasekhara signed a one-page letter, which stated that Parker was receiving psychiatric treatment at Access and that he was "unable to hold any competitive employment." Report at 25; *see also* AR at 872. On April 11, 2017, after the ALJ's decision but before the Appeals Council's decision, Dr. Chandrasekhara submitted a second letter that stated Parker was enrolled in Access's day treatment program, had a major depressive disorder, and was unable to hold any competitive employment. AR at 24.[3]

In completing her RFC assessment, the ALJ assigned Dr. Chandrasekhara's opinion "little weight." Report at 44; AR at 34. The ALJ provided three reasons for discounting this opinion: (1) Dr. Chandrasekhara "fail[ed] to give a function-by-function assessment" of Parker's

---

[3] The Report does not note the April 11, 2017 letter, likely because it was submitted after the ALJ's decision, and thus, would be less relevant as to whether the Commissioner's final decision was supported by substantial evidence.

11

impairment; (2) he "intrude[d] on an issue reserved to the administration"; and (3) his opinion was "inconsistent with the record as a whole." Report at 44; AR at 34.

In this action, Parker claimed that the ALJ wrongly discounted Dr. Chandrasekhara's opinion. *See* Pl. Mem. at 23–24. Judge Pitman determined that, under *Estrella*, remand was necessary because the ALJ did not develop the record to address either Dr. Chandrasekhara's treatment relationship with Parker or Dr. Chandrasekhara's specialty. *See* Report at 66. Specifically, Judge Pitman recommended that, on remand, the ALJ determine whether Dr. Chandrasekhara was Parker's treating physician, and, if so, re-evaluate the doctor's opinion and explicitly provide reasons for her evaluation. *See id.* at 68–69.

### C. Application of Legal Standards to Dr. Chandrasekhara's Opinion

The Commissioner objects to the Report's recommendation of remand, making two major points: (1) independent of Dr. Chandrasekhara's evaluation, the Report contained substantial evidence of Parker's ability to work, making the Report's recommendation of remand unwarranted; and (2) the ALJ gave good reasons to discount Dr. Chandrasekhara's report, making any error in her application of the treating physician rule irrelevant.

The Court addresses these objections in turn. The Commissioner's objections, in part, track arguments he made in the supplemental briefing before Judge Pitman, regarding the ALJ's assessment of Dr. Chandrasekhara's opinion. *See generally* Def. Supp. Br. Although clear error review is appropriate when a party merely "reiterates" arguments made before the magistrate judge, *Kirk*, 646 F. Supp. 2d at 538, the Court, in an abundance of caution, reviews the Report's remand recommendation *de novo*.

#### 1. Consistency of Remand Recommendation with the Report

The Commissioner argues that Judge Pitman's recommendation of remand cannot be squared with his recognition that the ALJ's RFC finding was supported by substantial evidence.

12

*See* Report at 59–61; Def. Obj. at 7. The Commissioner argues that Judge Pitman, in concluding that the RFC was supported by substantial evidence, necessarily took into account Dr. Chandrasekhara's opinion that Parker was unable to work due to his psychiatric condition. Def. Obj. at 7. And the Commissioner argues that Judge Pitman, having already found that the ALJ had "good reasons" to assign little weight to Dr. Chandrasekhara's opinion, erred in nonetheless remanding for further inquiry into the circumstances of Dr. Chandrasekhara's treatment of Parker. *See id.* at 7–8.

The Court adopts Judge Pitman's recommendation of remand. There is good reason to remand, given the gaps in the record relating to Dr. Chandrasekhara's treatment of Parker, and this recommendation is not inconsistent with the conclusion that other, substantial, evidence supported the ALJ's RFC finding. To the extent that the Commissioner, in opposing remand, relies on Judge Pitman's statement that the ALJ had "good reasons" for assigning little weight to Dr. Chandrasekhara's opinion, the Court disagrees with that assessment, mooting the Commissioner's second argument.

As to the Commissioner's first argument—that Judge Pitman could not have logically concluded that the RFC was supported by substantial evidence without adopting the ALJ's assessment of Dr. Chandrasekhara's opinion as worthy of discounting—the Commissioner is wrong. It was entirely logical for Judge Pitman to conclude (1) that the *current* record contains substantial evidence to support the ALJ's RFC analysis, but (2) that further development of the record—in accord with the ALJ's duty to develop the record, which is heightened in the context of treating physicians, *see Hooper*, 199 F. Supp. 3d at 807—had the capacity to undermine the ALJ's RFC assessment. As Parker points out, a deeper understanding of the circumstances and nature of Dr. Chandrasekhara's treatment and the reasons for his conclusion that Parker was

13

unable to work had the potential to change the ALJ's final determination. *See* Pl. Reply at 5 (arguing that Dr. Chandrasekhara's opinion, if developed, could be consistent with the opinions of Parker's consultative physicians).

Remand is warranted here for several reasons.

First, the undeveloped record leaves unclear whether Dr. Chandrasekhara was, in fact, Parker's treating physician. *See* Report at 68. *Brathwaite v. Barnhart* is instructive on this point. No. 04 Civ. 2850 (GBD) (DF), 2007 WL 5322447 (S.D.N.Y. Dec. 20, 2007), *report and recommendation adopted*, No. 04 Civ. 2850 (GBD) (DF), 2008 WL 2669351 (S.D.N.Y. June 26, 2008). There, the magistrate judge recommended remand because she was unable to determine from the administrative record the extent of a doctor's treatment relationship and, consequently, whether the doctor was the plaintiff's treating physician. *Id.* at *11–12. The magistrate judge observed that the record included a report from the doctor that implied the doctor had seen the plaintiff five times, a form that identified the doctor as a "prescribing physician," and a lack of identifiable signatures on chart records. *Id.* However, the ALJ did not "explore any of this," nor did the ALJ "inquire[ ] of Plaintiff as to the extent of his treatment relationship" with the doctor. *Id.* And, because the ALJ did not explicitly refer to the doctor as a "treating physician," it was not clear whether the ALJ applied the treating physician rule in his evaluation of the doctor's report. *Id.* at *12.

The same is true here. On various forms, Parker indicated that Dr. Chandrasekhara had treated him for years and prescribed him medications. *See* AR at 315–16. Dr. Chandrasekhara also co-signed and supervised Parker's treatment plan. *See id.* at 866. And there are many treatment records that are signed by "CHA," possibly denoting Dr. Chandrasekhara, but the record does not conclusively reveal who "CHA" is. *See id.* at 800, 802, 804–05, 809, 811, 815,

14

817, 819. Despite these indicators that Dr. Chandrasekhara was Parker's treating physician, the ALJ did not "explore any of this" or even ask Parker about his treatment relationship with Dr. Chandrasekhara. *See Braithwaite*, 2007 WL 5322447, at *12; *see also Di Pasqua v. Colvin*, No. 11 Civ. 4056 (ENV), 2013 WL 3766540, at *4 n.7 (E.D.N.Y. July 16, 2013) (although ALJ's failure to examine opinion of doctor who might or might not be patient's treating physician is "not reversible error *per se*," because plaintiff listed the doctor on a medical record form, "[t]he Court therefore [could] not fathom how, on rehearing, the ALJ could meet his duty to complete the record without seeking additional input from this treating source"). And because the ALJ also did not refer to Dr. Chandrasekhara as Parker's "treating physician" or state that she was applying the treating physician rule, it is impossible to know what standard the ALJ used when discounting Dr. Chandrasekhara's opinion. *See* AR at 34. Remand is thus necessary to determine Dr. Chandrasekhara's treatment relationship with Parker and whether Dr. Chandrasekhara qualified as a treating physician.

Second, even assuming that the ALJ considered Dr. Chandrasekhara to be a treating physician and applied the treating physician rule in the course of giving the doctor's opinion limited weight, *see* Def. Obj. at 9 (adopting this assumption), she committed legal error. As the Second Circuit has held, where an ALJ denies a treating physician's opinion controlling weight, the ALJ must "explicitly consider" the four *Burgess* factors: (1) the frequency, length, nature, and extent of treatment; (2) the medical evidence that supports the opinion; (3) the consistency of the opinion with the remaining evidence; and (4) the physician's specialty, if any. *Estrella*, 925 F.3d at 95–96. Failure to do so is "procedural error." *Id.* at 96. The ALJ did not do so here. Quite the contrary, as Judge Pitman noted, the ALJ failed to consider the first factor of the treatment relationship and the fourth factor of specialty. *See* Report at 65. Both errors warrant

remand. *See Cabrera v. Comm'r of Soc. Sec.*, No. 16 Civ. 4311 (AT) (JLC), 2017 WL 3686760, at *3 (S.D.N.Y. Aug. 25, 2017) (remanding where ALJ (1) did not consider the treatment relationship and (2) did not explicitly consider the treating physician's specialty, though ALJ noted the physician was a psychiatrist).

This type of procedural error could be considered harmless only if the ALJ provided "good reasons" for assigning little weight to the treating physician's opinion. *See Estrella*, 925 F.3d at 96. In this context, the Commissioner relies on Judge Pitman's statement that the ALJ articulated "good reasons" to do so. *See* Report at 66. On this narrow point, the Court disagrees with Judge Pitman. As the Court explains *infra*, *see* Part III.C.2, given the inadequate attention given to Dr. Chandrasekhara's treatment of Parker, discounting it was, by definition, premature. The ALJ's error was not harmless.

In sum, on remand, the ALJ must explicitly determine whether Dr. Chandrasekhara was Parker's treating physician. If so, then the ALJ must explicitly consider the four *Burgess* factors, including the treatment relationship and Dr. Chandrasekhara's specialty. To the extent the ALJ finds that the doctor's opinion is not sufficiently detailed or supported by the current record, the ALJ must also, in accord with her duty to develop the record, seek additional information from Dr. Chandrasekhara. *See Brathwaite*, 2008 WL 2669351, at *3. Then she must provide good reasons for her assignment of weight to Dr. Chandrasekhara's opinion.

### 2. The ALJ's Reasons for Her Assessment of Dr. Chandrasekhara's Opinion

The Commissioner argues that the ALJ's evaluation of Dr. Chandrasekhara's opinion survives *Estrella*, because, even assuming that Dr. Chandrasekhara was Parker's treating physician, the ALJ articulated good reasons for his opinion. Def. Obj. at 9. The ALJ provided such three reasons: (1) Dr. Chandrasekhara did not provide a function-by-function assessment of

16

Parker; (2) he opined on an issue reserved for the Commissioner, namely that Parker was disabled and could not work; and (3) his opinion was inconsistent with the record as a whole. *See* Def. Obj. at 9; AR at 34.

For the reasons that follow, none of these provides a "good reason" to assign Dr. Chandrasekhara's opinion little weight. The absence of good reasons reinforces Judge Pitman's assessment that remand was in order so as to develop a more complete record of Dr. Chandrasekhara's treatment relationship with Parker.

First, a lack of function-by-function analysis by Dr. Chandrasekhara is not a good reason for discounting his opinion. *See Laureano v. Comm'r of Soc. Sec.*, No. 17 Civ. 01347 (SDA), 2018 WL 4629125, at *13 (S.D.N.Y. Sept. 26, 2018) (holding that ALJ erred by assigning "limited weight" to treating physician's opinion when Commissioner argued, *inter alia*, that physician did not do function-by-function analysis); *see also Santiago v. Comm'r of Soc. Sec.*, No. 16 Civ. 05006 (LDH), 2018 WL 1445572, at *8 (E.D.N.Y. Mar. 23, 2018); *Stango v. Colvin*, No. 14 Civ. 01007 (CSH), 2016 WL 3369612, at *11 (D. Conn. June 17, 2016). Instead of largely disregarding Dr. Chandrasekhara's entire opinion, the ALJ, consistent with her duty to develop the record, should have affirmatively sought such a function-by-function analysis from him. *Laureano*, 2018 WL 1445572, at *13; *see also Schaal*, 134 F.3d at 505 (finding that ALJ erred in discrediting treating physician based on lack of clinical findings, because, "even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*") (citing *Perez*, 77 F.3d at 47). Having identified the lack of a function-by-function analysis from a treating physician in the record, the ALJ also could have sought a function-by-function analysis from other apparent treating physicians, such as Dr. Kathpalia. *See Laureano*, 2018 WL 1445572, at *13; *see also* Def. Supp. Br. at 2 (asserting that

17

Dr. Kathpalia was Parker's treating physician). Notably, the Second Circuit has held that there is no *per se* rule requiring remand when an ALJ does not perform a function-by-function analysis in making a disability determination. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). It follows that there is no *per se* rule requiring a treating physician's opinion to be "totally disregarded for failure to perform that exercise." *Stango*, 2016 WL 3369612, at *11.

Second, the fact that Dr. Chandrasekhara opined on an ultimate issue reserved for the Commissioner, namely that Parker was unable to work, *see Snell*, 177 F.3d at 133, does not justify discounting his opinion. While an ALJ need not credit a treating physician's opinion on such an ultimate issue, that "does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinion is not being credited." *Id.* at 134. Instead, the ALJ must provide reasons "to let claimants understand the disposition of their cases, even—and perhaps especially—when those decisions are unfavorable." *Id.* Here, the ALJ's duty was to provide good reasons why she, unlike Dr. Chandrasekhara, concluded Parker could work. *See id.* ("A claimant . . . who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."). And the ALJ ought to have sought Dr. Chandrasekhara's factual basis for so opining. "It is entirely possible that [Dr. Chandrasekhara], if asked, could have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis of complete disability." *Rosa*, 168 F.3d at 80 (internal quotation marks omitted); *see also Laureano*, 2018 WL 4629125, at *13. The ALJ did not do so.

Third, the ALJ's statement that Dr. Chandrasekhara's opinion was "inconsistent with the record as a whole," AR at 34, is too conclusory to support discounting the doctor's opinion. *See Garner v. Colvin*, No. 13 Civ. 4358 (JCF), 2014 WL 2936018, at *9 (S.D.N.Y. June 27, 2014)

18

(rejecting ALJ assignment of "little or no weight" to treating physician when physician's opinion was "inconsistent with claimant's activities of daily living, her testimony at the hearing, and the rest of the substantial evidence in the record"); *see also Duncan v. Astrue*, No. 09 Civ. 4462 (KAM), 2011 WL 178549, at *18 (E.D.N.Y. May 6, 2011) (rejecting ALJ assignment of "reduced weight" to treating physician's opinion when it was "not consistent with the evidence of record" and "not supported by the preponderance of objective evidence of record"). While compelling contrary record evidence conceivably could have justified giving little weight to Dr. Chandrasekhara's opinion, the ALJ did not identify any such evidence, or develop this point in meaningful detail. *See Marshall v. Colvin*, No. 16 Civ. 5631 (NSR) (JCM), 2019 WL 1529377, at *4 (S.D.N.Y. Apr. 9, 2019). And the ALJ, if she "believed [Dr. Chandrasekhara's report] to be insufficiently explained, lacking in support, or inconsistent with [his] other reports," should have sought "clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504–05 (S.D.N.Y. 2014) (examining internal inconsistency in treating physician's opinion).

### D. No Clear Error Elsewhere

Neither the Commissioner nor Parker offer further challenges to Judge Pitman's Report. Accordingly, this Court has reviewed the remainder of the Report for clear error and found none. The Court therefore adopts the remainder of the Report in its entirety.

### CONCLUSION

For the reasons stated herein, the Court grants Parker's motion for judgment on the pleadings, Dkt. 15, and denies the Commissioner's motion, Dkt. 21. On remand, the ALJ must determine whether Dr. Chandrasekhara is Parker's treating physician, and if so, expressly consider each *Burgess* factor, further develop the record as needed, and provide good reasons for the weight she then assigns to Dr. Chandrasekhara's opinion.

19

The Clerk of the Court is respectfully instructed to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 13, 2019
New York, New York